IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | | |
|---|---|---|
| ANDY BUXTON, | ) | |
| | ) | |
| | ) | 2:20-CV-01647-CRE |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN E. WETZEL, SECRETARY OF | ) | |
| CORRECTIONS; DORINA VARNER, | ) | |
| ZACHARY J. MOSLAK, MELINDA L. | ) | |
| ADAMS, | ) | |
| SUPERINTENDENT/WARDEN/FACILITY | ) | |
| MANAGER; SHANE DADY, | ) | |
| DSCS/DEPUTY; J. YODIS, HEARING | ) | |
| EXAMINER/COORDINATOR; EDWARD | ) | |
| WHITMAN, UNIT MANAGER;  SGT. | ) | |
| HAMILTON, KAREN FEATHERS, CHCA; | ) | |
| AND ADAM MILLIREN, | ) | |
| CORRECTIONAL OFFICER; | ) | |
| | ) | |
| Defendants, | ) | |

## MEMORANDUM OPINION[1]

Cynthia Reed Eddy, Chief United States Magistrate Judge.

This civil action was initiated in this court on November 2, 2020, by *pro se* Plaintiff Andy

Buxton. (ECF No. 1). In the Fourth Amended Complaint ("FAC"), Plaintiff asserts causes of action

pursuant to the "1st, 4th, 5th, 8th, and 14th Amendments to the United States Constitution against

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment.  (ECF Nos. 41, 42).

Defendants John Wetzel,[2] Dorina Varner,[3] Zachary J. Moslak,[4] Melinda L. Adams,[5] Shane Dady,[6] J. Yodis,[7] Edward Whitman,[8] Sergeant Hamilton,[9] Karen Feathers,[10] and Adam Milliren,[11] related to incidents occurring while Plaintiff was an inmate at SCI-Mercer. FAC (ECF No. 67) at 12-13. This court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1331.

Presently before the court is a motion by Defendants to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 70).  For the reasons that follow, Defendants' motion is granted in part and denied in part.

## I.     BACKGROUND

This Court attempts to provide a summary of the facts set forth in the FAC.  It appears that since at least November 2018, Plaintiff had issues with a detached retina in his left eye, along with other unspecified medical issues, that required medical attention while he was incarcerated at SCI-Mercer.  According to Plaintiff, from November 2018 to the filing of the FAC (January 2022), Plaintiff's medical needs were not always attended to in a prompt and medically proper way. *See*

---

[2] Wetzel is the Secretary of the Pennsylvania Department of Corrections.

[3] Varner is the Chief Grievance Officer for the Pennsylvania Department of Corrections.

[4] Moslak is the Chief Hearing Examiner at SCI-Mercer.

[5] Adams is the Superintendent of SCI-Mercer

[6] Dady is employed at SCI-Mercer and is a member of the Program Review Committee ("PRC").

[7] Yodis is a Hearing Officer at SCI-Mercer.

[8] Whitman is a Unit Manager at SCI-Mercer.

[9] Hamilton is the Sargent of Property at SCI-Mercer.

[10] Feathers is involved with administering healthcare at SCI-Mercer.

[11] Milliren is a Correctional Officer ("CO") at SCI-Mercer.

FAC (ECF No. 67) at ¶¶ 7(a)-(f), 8(a)-(h).  Plaintiff claims that he suffers "from serious and time sensitive healthcare issues." *Id*. at ¶ 7(a).  Plaintiff specifically points to his detached retina diagnosed by "an outside medical physician." *Id*.  Plaintiff claims his treatment was unnecessarily delayed, became worse, and damaged his vision.  *Id*.

Plaintiff asserts that he sent "several correspondences" to Defendant Wetzel. FAC (ECF No. 67) at ¶ 2. Subsequently, on February 11, 2019, there was an order to have Plaintiff's blood drawn for non-medical reasons by Defendant Feathers, and Plaintiff was informed that his failure to comply would result in him being placed in the Restrictive Housing Unit ("RHU").  *Id*. at ¶ 8(a). Plaintiff asserts that he attempted to bring this issue to Defendants Adams and Varner, but the allegations were never addressed.  *Id*. at 8(b).  Plaintiff was then billed for medical care, which, according to Plaintiff, is part of a pattern of retaliatory occurrences beginning in February 2019.

Plaintiff also asserts that Defendant Hamilton seized "Plaintiff's legal work" which was then destroyed by SCI-Mercer. FAC (ECF No. 67) at ¶ 9.  According to Plaintiff, "[o]n 9/18/19, Plaintiff's property was removed by Sgt. Hamilton." *Id*. at ¶ 2(h).  Specifically, he asserts that "important legal research was lost due to the illegal destruction of his legal documents.  The seizure and loss of Plaintiff's legal work interfered with cases 2-15-cv-0163, 17-594, 0064, State Court No. 793 WDA 2019, 339 WDA 2018, Supreme Court No. 20-5611 and caused prejudice to Plaintiff (This court can take judicial notice)." *Id*.

Plaintiff also asserts that misconducts were filed against him, including Misconduct #D320655, which occurred in February 2020. According to Plaintiff, "[o]n February 2[3], 2020, [Defendant] Milliren issued Misconduct No. D320655 charging Plaintiff with the Class 1 offense of using abusive, obscene, or inappropriate language to an employee … and the Class 1 offense of

refusing to obey an order." FAC (ECF No. 67) at 5(a); *see also* Exhibit I (ECF No. 18-1) at 1.[12],[13] Plaintiff responded by requesting the video evidence of the incident and stating the names of three inmates who were present for or heard the interaction. *See* Exhibit I (ECF No. 18-1) at 2.

On February 25, 2020, at a disciplinary hearing before Hearing Examiner Yodis, Plaintiff pleaded not guilty. Yoder denied Plaintiff's request to view the video because there was no audio, and Yodis concluded that he believed Milliren's version of events instead of Plaintiff's version. Thus, Plaintiff was found guilty. Exhibit I (ECF No. 18-1) at 4. Plaintiff was sentenced to 30 days of cell restriction and loss of his job. *Id*.

Plaintiff filed an appeal to the PRC, which was comprised of Defendant Dady and two others. Exhibit I (ECF No. 18-1) at 5. In that appeal, Plaintiff complained that Yodis did not view the video or make Plaintiff's witnesses available. On March 2, 2020, the PRC viewed the video and upheld the misconduct. *Id*. Plaintiff then appealed to the "facility manager." *Id*. at 7. On March 26, 2020, Defendant Adams responded that the PRC's choosing to review the video and the hearing examiner not doing so did not alter the sanction imposed on Plaintiff. *Id*. at 8. Plaintiff then filed an appeal to Defendant Moslak, the Chief Hearing Examiner. *Id*. at 9.

Meanwhile, on March 23, 2020, Defendant Adams sent a memo stating, "Upon further review of this misconduct, I have decided to dismiss the charges." *Id*. at 11. However, on April 7,

---

[12] According to Plaintiff, the allegations underlying the misconduct were that Milliren accused Plaintiff of calling Milliren a "bastard" and Plaintiff refused to lock himself into his cell as ordered. FAC (ECF No. 67) at ¶ 5(a).

[13] Although the Court recognizes that an amended complaint replaces a complaint in its entirety, *see Wilson v. Martone*, 2012 WL 715319, at *5 (D.N.J. 2012), this Court, in its discretion, will still consider exhibits Plaintiff attached to his prior complaints because Plaintiff is proceeding *pro se*. *But see Lemmons v. County of Erie, Pennsylvania*, 2020 WL 4041551, at *3 n.3 (W.D. Pa. 2020) (concluding that the District Court would not consider exhibits attached to prior versions of Lemmons' complaint even though Lemmons was proceeding *pro se*).

2020, Defendant Moslak denied Plaintiff's appeal that was filed prior to the charges being dismissed. *Id.* at 10. *See also* FAC (ECF No. 67) at ¶¶ 5(a)-(j), 6(a)-(d). According to Plaintiff, it was this misconduct, which based on the foregoing Plaintiff asserts was fabricated, that caused him to be denied parole on June 20, 2020.[14] FAC (ECF No. 67) at ¶ 2(c)(1).

   *A. Procedural History*

On November 20, 2020, Plaintiff filed a petition for leave to proceed *in forma pauperis* in the instant action. (ECF No. 1). On January 26, 2021, this Court granted Plaintiff's petition, and on January 29, 2021, the Complaint was filed. (ECF Nos. 15, 16). Defendants were served, and on May 10, 2021, Defendants filed a motion for more definite statement and brief in support thereof. (ECF Nos. 34, 35). On June 24, 2021, this Court granted Defendants' motion, and on July 8, 2021, this Court denied Plaintiff's motion for reconsideration of that order. (ECF Nos. 43, 45). On August 23, 2021, Plaintiff filed the Amended Complaint. (ECF No. 50). On August 27, 2021, Defendants filed a motion to dismiss the Amended Complaint. (ECF No. 51). On October 18, 2021, Plaintiff filed a motion for leave to file an amended complaint. (ECF No. 59). This Court permitted that filing, and on October 29, 2021, Plaintiff filed an amended complaint. (ECF Nos. 59, 63). Defendants filed a motion to dismiss that complaint, and on January 12, 2022, Plaintiff filed the FAC, the complaint at issue in this matter. (ECF Nos. 64, 67).

On January 24, 2022, Defendants filed the instant motion to dismiss the FAC and brief in support thereof. (ECF Nos. 69-70). On February 15, 2022, Plaintiff filed a response. (ECF No. 72). Defendants have not filed a reply, and this motion to dismiss is now ripe for disposition.

## II.    STANDARD OF REVIEW

---

[14] Although an exact date is not clear, Plaintiff was no longer incarcerated as of September 2021. (ECF No. 55).

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need to allege detailed factual allegations to survive a Rule 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and be "sufficient to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. [] Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

Furthermore, a *pro se* pleading is held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). As such, a *pro se* complaint pursuant to 42 U.S.C. § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 2102 (10th Cir. 1996).

Finally, "when a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments." *Ricoh USA, Inc. v. Bailon*, 419 F. Supp. 3d 871, 875 (E.D. Pa. 2019). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust. Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (internal citations omitted).

## III.   DISCUSSION

As discussed *supra*, because Plaintiff is proceeding *pro se*, this Court will view the facts, complaints, and briefs as expansively as possible in assessing the claims presented by Plaintiff against Defendants.   Plaintiff has asserted numerous allegations against various Defendants pursuant to various amendments to the United States Constitution.   In considering these claims, this Court recognizes that "[a] plaintiff raising a claim under Section 1983 must allege a violation of a right secured by the Constitution or the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Wilkins v. Berks Cty. Jail Sys.*, 2017 WL 2591943, at *4 (E.D. Pa. 2017).  This Court will consider each allegation set forth by Plaintiff in the context of the constitutional violation Plaintiff has alleged.

### A.   First Amendment Retaliation and Access to Courts Claims

Many of Plaintiff's claims in the FAC center around Plaintiff's position that prison officials are engaging in a pattern of retaliation against him in violation of the First Amendment.  Plaintiff sets forth ten separate acts he believes were retaliatory in nature: (1) the filing of the fabricated misconduct against Plaintiff; (2) punishment for this misconduct; (3) failure of prison officials, including Varner, Moslak, Dady, Wetzel, Adams, and Whitman, to carry out their duties relative to this misconduct; (4) denial by Yodis for witnesses to testify at the hearing for the misconduct;

(5) "illegal seizure and destruction of property;" (6) denial of proper medical treatment; (7) abuse by Defendants; (8) denial of timely medical treatment; (9) denial of access to an attorney; and (10) conspiracy to have Plaintiff's parole denied. FAC (ECF No. 67) at ¶ 4(a).  Defendants contend that Plaintiff has failed to allege adequately that there is any causal connection between any of the actions taken by prison officials and the exercise of Plaintiff's constitutional rights. Defs.' Br. (ECF No. 71) at 12.

"Some government actions, not unconstitutional in and of themselves, may be constitutional torts if motivated in substantial part by a desire to retaliate for the exercise of a constitutional right." *Sims v. Piazza*, 462 F. App'x 228, 233 (3d Cir. 2012).  "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal citation and quotation marks omitted).  "Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." *Miskovitch v. Hostoffer*, 721 F. Supp. 2d 389, 396 (W.D. Pa. 2010).

In considering whether a plaintiff has set forth a *prima facie* case of retaliation, it is well-settled that the filing of a grievance is constitutionally protected conduct. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006).  With respect to the second element, this Court must consider which of the acts asserted by a plaintiff might constitute adverse actions.  An adverse action is an action where a "person of ordinary firmness would be deterred from exercising his rights." *Sims*, 462 F. App'x at 233.  "The plaintiff does not necessarily need to allege that the

adverse action violated a constitutional right []; rather, the plaintiff need only show that the adverse action was motivated in substantial part by a desire to punish an individual for the [exercise] of a constitutional right." *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa.), aff'd, 358 F. App'x 302 (3d Cir. 2009).  This Court notes that "[t]he rejection or denial of grievances does not, by itself, suggest that the action was adverse or retaliatory.  Moreover, any use of words, including threatening or offensive language, does not constitute retaliatory action." *Id*. Finally, a plaintiff must assert a causal connection between the constitutionally protected conduct and the adverse action.  "If a prisoner sufficiently establishes a causal connection, prison officials may overcome this element by demonstrating that the same action would have been taken in the absence of the protected activity." *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa.), aff'd, 358 F. App'x 302 (3d Cir. 2009) (internal quotation marks omitted).

Here, Plaintiff states that a number of retaliatory actions occurred because he "filed grievances, spoke his opinion via Inmate Requests, letters to individuals that expressed the abuses." FAC (ECF No. 67) at ¶ 2(a).  While it is hard to pin down at this juncture exactly what grievances Plaintiff filed, when those grievances were filed, and which adverse actions ensued, this Court will attempt to decipher if any grievances filed by Plaintiff are linked to any of the retaliatory actions asserted by Plaintiff to survive this motion to dismiss.

A liberal reading of the FAC provides the following actions which may satisfy adverse action requirement: 1) Milliren's filing a fabricated misconduct charge (#D320655), which led to a series of punishments; 2) Hamilton's seizure and destruction of property; and 3) being denied medical care and Feathers's seizure of Plaintiff's blood.  This Court will consider each one.

i.      *Fabricated Misconduct Charge*[15]

According to Plaintiff, Milliren filed a fabricated misconduct charge, Misconduct #D320655 against Plaintiff after Plaintiff filed a grievance against Milliren for using "derogatory" and "abusive" language toward Plaintiff. FAC (ECF No. 67) at ¶ 2(j).  Such an allegation is adequate to state a claim for retaliation: Plaintiff has asserted he filed a grievance against Milliren and that Milliren retaliated by fabricating a misconduct charge against Plaintiff.  *See Mitchell*, 318 F.3d at 530 (holding prisoner's allegation that he was falsely charged with misconduct in retaliation for filing a complaint against prison officer stated a First Amendment retaliation claim).[16] Based on the foregoing, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim against Milliren is denied.

Plaintiff also seeks to bring these First Amendment retaliation claims related to this conduct against all Defendants who heard Plaintiff's appeals related to this misconduct, as well as their superiors.  It is Plaintiff's position that there was a vast conspiracy among Defendants to deny Plaintiff many of his rights, including parole, in retaliation for filing grievances. Although Plaintiff's claims appear fantastical, at this juncture, it is appropriate to permit discovery on these claims to determine what, if any, grievances or complaints were made or actually filed by Plaintiff against any of these Defendants for the conduct which he alleges, and whether any of these

---

[15] Plaintiff also asserts additional Fourteenth Amendment claims related to this conduct, which this Court discusses *infra*.

[16] Plaintiff also alleges this same conduct violates his First Amendment rights with respect to access to courts.  The Third Circuit has held that "falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment guarantee of access to the courts." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002).  However, Plaintiff has not alleged that he was retaliated against for filing legal actions – his claims for retaliation relate to grievances and complaints within the prison system.  Thus, Plaintiff's First Amendment access-to-courts claim is dismissed with prejudice.

conspiratorial actions may have occurred during the process of adjudicating Plaintiff's misconduct. In particular, it appears that Adams did summarily dismiss the misconduct at a late stage in proceedings, after this misconduct was reviewed by Yodis, Dady, and Moslak, and Plaintiff should be permitted to engage in discovery to determine why this occurred. Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim against Defendants Wetzel, Varner, Whitman, Moslak, Adams, Dady, and Yodis with respect to this misconduct is denied.

### ii.     Hamilton's Seizure and Destruction of Property[17]

According to Plaintiff, "[o]n 9/8/19, Plaintiff's property was removed by Sgt. Hamilton." FAC (ECF No. 67) at 2(h). Plaintiff alleges this property was destroyed, and Plaintiff filed a grievance. *Id*. Thus, it appears that Plaintiff filed a grievance against Hamilton after his property was removed and destroyed. Thus, assuming *arguendo* that Plaintiff established the first two elements of a retaliation claim, Plaintiff has failed to demonstrate a causal link between the protected conduct and the adverse action.

However, this Court still must consider whether to grant Plaintiff leave to amend the complaint. "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust. Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (internal citations omitted). Here, Plaintiff has amended this complaint four times and has not been able to assert allegations to establish this claim. Any attempt to permit further amendment would be futile at this

---

[17] Plaintiff also asserts a First Amendment access-to-courts claim, as well as Fourth and Fourteenth Amendment claims, related to this property, which are discussed *infra*.

juncture.[18] Accordingly, any claim related to First Amendment retaliation against Hamilton or any other Defendant with respect to the seizure of this property is dismissed with prejudice.

### iii. *Denial of Medical Care and Seizure of Blood*[19]

Plaintiff also asserts First Amendment retaliation claims against Feathers, as well as others, related to his medical treatment.  Plaintiff asserts that in February 2019, Feathers was involved in an incident where Plaintiff's blood was forcibly and mistakenly drawn from him. FAC (ECF No. 67) at ¶ 2(i).  Plaintiff also claims that Feathers denied him access to medical care on various occasions, as well as permitted billing errors to occur.  Plaintiff states he filed a "another grievance" against Feathers with regard to these billing errors. *Id*.  Plaintiff asserts that "[a]ll of these actions … can sufficiently be regarding as ongoing and continued retaliatory behavior targeted and executed upon Plaintiff because of Plaintiff exercising his right to protected conduct." *Id*. at 8(e).

In the context of a retaliation claim, adverse actions must be more than *de minimis*.  For example, the Third Circuit has held that "that pouring lotion down a toilet and confiscating some [] eyeglasses would not deter a person of ordinary firmness from exercising his rights, assuming the acts were retaliation for filing grievances." *Sims*, 462 F. App'x at 233.  However, "the termination of prison employment is a sufficient deterrent to meet the pleading standard for a retaliation claim." *Id*.

Here, Plaintiff asserts actions, such as mistakenly taking blood and billing errors, which Plaintiff himself describes as "negligent" behavior on the part of prison officials.  These actions

---

[18] Unless otherwise noted, this reasoning applies to this Court's dismissing with prejudice  any of Plaintiff's other claims as set forth *infra*.

[19] Plaintiff also asserts Eighth Amendment claims and a Fourteenth Amendment Equal Protection claim related to his medical care, which are discussed *infra*.

are *de minimis* in nature and do not satisfy the adverse action element of a *prima facie* claim for retaliation.  With respect to delayed or denied medical care, Plaintiff does not assert specifically that any grievance filed against any particular individual led to this delayed or denied medical care. Thus, this Court concludes that any claim related to First Amendment retaliation for delayed or denied medical care is dismissed with prejudice.

     B.  *First, Fourth, and Fourteenth Amendment Claims Related to Seizure of Plaintiff's Documents and Property*

Plaintiff also contends that Defendant Hamilton illegally seized his property, including legal work, in violation of the First, Fourth,[20] and Fourteenth Amendments. FAC (ECF No. 67) at ¶ 9.  Specifically, Plaintiff asserts that on "9/8/19, Plaintiff's property was removed by Sgt. Hamilton." *Id*. at ¶ 2(h).  It is Plaintiff's position that this seizure occurred without due process. *Id*.  In addition, Plaintiff claims that because "legal documents" were seized and destroyed, which "interfered with cases 2-15-cv-0163, 17-594, 0064, State Court No. 793 WDA 2019, 339 WDA 2018, Supreme Court No. 20-5611." *Id*.

> The Constitution guarantees inmates a right of access to the courts. The Supreme Court has repeatedly recognized that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. This right is not, however, unlimited.

> Inmates may only proceed on access-to-court claims with respect to (1) challenges to their sentences (direct or collateral), (2) conditions-of-confinement

---

[20] Plaintiff makes vague references to the Fourth Amendment. See FAC (ECF No. 67) at 2(a)(2) ("Varner could have pushed to have Sgt. Hamilton reprimanded for destruction of Plaintiff's property while Plaintiff was out on Writ without good cause.  Plaintiff suffered damage in various ways by losing all his legal work….(4th [] Amendment violation[].").  However, it is well-settled that the Fourth Amendment is inapplicable in the prison context. *See Morales v. Wetzel*, 519 F. Supp. 3d 186, 191 (E.D. Pa. 2021) ("[P]risoners have no legitimate expectation of privacy ... and the Fourth Amendment's prohibition on unreasonable searches [and seizures] does not apply in prison cells."). Thus, any claim related to the Fourth Amendment is dismissed with prejudice.

> cases, and (3) pending criminal charges. Additionally, an inmate must show that
> the lack of meaningful access to the courts caused him past or imminent actual
> injury.  To do this, he must identify an arguable, nonfrivolous underlying cause of
> action, either anticipated or lost, and show that the prison's deficient program
> frustrated his efforts to litigate that action.

*Duran v. Merline*, 923 F. Supp. 2d 702, 722-23 (D.N.J. 2013) (internal citations and quotation marks omitted).

In considering whether Plaintiff has stated a claim against Defendant Hamilton for his seizing and possibly destroying Plaintiff's legal work, this Court points out that Plaintiff, despite amending his complaint three separate times, has not identified with any specificity what that legal work was or how it affected the cases he named. Moreover, Plaintiff has not alleged that he has lost a chance to pursue a nonfrivolous claim. *See Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008) ("The complaint must describe the underlying arguable claim well enough to show that it is more than mere hope, and it must describe the lost remedy.") (internal quotation marks omitted). Thus, any First Amendment access to courts claim is dismissed.

Similarly, Plaintiff has failed to establish a Fourteenth Amendment violation for the deprivation of this or any other property.  "A prisoner's due process claim based on a state actor's unauthorized deprivation of property is not actionable under § 1983 unless no adequate post-deprivation remedy is available." *Mattis v. Dohman*, 260 F. App'x 458, 461 (3d Cir. 2008).  "In Pennsylvania, the state prison system has established an internal grievance procedure through which the state hears claims and, when appropriate, provides remedies; Mattis was provided with a meaningful post-deprivation remedy regarding the loss of his property in the form of this grievance system." *Id*.  Thus, Plaintiff cannot state a Fourteenth Amendment Due Process claim based on his allegations regarding the deprivation of property.  Based on the foregoing, all First,

Fourth, and Fourteenth Amendment claims against Defendant Hamilton (and any of his superiors) related to the seizure and destruction of property are dismissed with prejudice.

### C.  Violations of the Eighth Amendment

Plaintiff sets forth various claims related to medical treatment, which he contends violated his rights under the Eighth Amendment.  *See* FAC (ECF No. 67) at ¶¶ 2(i), 7-8.  Plaintiff makes a series of claims in this regard, including delayed treatment for an eye condition, illegal seizure of Plaintiff's blood, and medical billing errors.

"Acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs constitute cruel and unusual punishment under the Constitution." *Wisniewski v. Frommer*, 751 F. App'x 192, 195 (3d Cir. 2018) (internal citations and quotation marks omitted). "To prove that a prison official acted with deliberate indifference, a § 1983 plaintiff must make two separate showings: (1) a subjective showing that the defendants were deliberately indifferent to [his or her] medical needs and (2) an objective showing that those needs were serious." *Id*.

With respect to Plaintiff's claims related to his detached retina, there can be no doubt that such a condition is objectively serious.  However, Plaintiff's allegations related to deliberate indifference are less clear.  "[T]here is a critical distinction between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (internal citation and quotation marks omitted). "Because mere disagreement as to the proper medical treatment does not support a claim of an eighth amendment violation, when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Id*.

Instantly, it is evident that medical care was provided, as Plaintiff states that he "eventually receiv[ed] the delayed treatment for his detached retina." FAC (ECF No. 67 at ¶ 7(b).  It is Plaintiff's position that even though he received "some minimal care and, then after some time had passed, the procedure to repair the detached retina and the necessary after care (eye drops and then after another long delay for receipt of the eyeglasses)," the care was below the Constitutional standard.  In considering this claim, Plaintiff provides no information about when he informed prison officials about the issues with his eye, when he first saw a doctor, when treatment was prescribed, or when the retina repair actually occurred.  Moreover, "[e]ven if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation unless deliberate indifference be shown." *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

Thus, because Plaintiff received medical treatment for his eye condition, and Plaintiff has presented no allegations that any delay in receiving that care was the result of deliberate indifference, he has failed to state an Eighth Amendment claim, and this claim is dismissed with prejudice.

This Court now considers Plaintiff's claim that his blood was taken involuntarily and mistakenly by Feathers. FAC (ECF No. 67) at ¶ 8(a).  At the outset, it is noted that Plaintiff has not alleged that he was injured by this in any respect; rather, his claim was that his blood should not have been taken in the first place.  "Deliberate indifference to a serious medical need involves the unnecessary and wanton infliction of pain." *Green v. Bledsoe*, 2012 WL 2115491, at *8 (M.D. Pa. Mar. 27, 2012), report and recommendation adopted, 2012 WL 2115519 (M.D. Pa. June 11, 2012), aff'd, 534 F. App'x 100 (3d Cir. 2013).  Even if Feathers mistakenly drew Plaintiff's blood,

such a minor medical procedure involving minimal pain and inconvenience does not rise to the level of a Constitutional violation.  Accordingly, any Eighth Amendment claim against Feathers is dismissed with prejudice.

Finally, Plaintiff attempts to assert an Eighth Amendment claim with respect to medical billing errors. As discussed supra, Eighth Amendment medical claims require a showing of a serious medical need.  Because medical billing errors have no relationship to medical needs, Plaintiff may not maintain an Eighth Amendment claim.

Furthermore, to the extent Plaintiff is asserting these medical-related claims against non-medical prison personnel, this Court points out that "absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims." *Green*, 2012 WL 2115491, at *10 (M.D. Pa. Mar. 27, 2012).  Thus, any Eighth Amendment claim against any other Defendant is also dismissed with prejudice.  Based on the foregoing, all Eighth Amendment claims against all Defendants are dismissed with prejudice.

### D.  Fourteenth Amendment Equal Protection Claims

Plaintiff also asserts that the situation around his misconduct violated the Fourteenth Amendment's equal protection provision.  FAC (ECF No. 67) at ¶ 5.  In addition, Plaintiff asserts that he was treated differently than other inmates with respect to his medical claims. *Id*. at ¶ 7(f).

"The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 404-05 (M.D. Pa. 2013) (quoting U.S. Const. amend. XIV, § 1). To state a claim under this theory, a plaintiff must assert that "he has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in

treatment." *Id*. at 405.  Plaintiff merely sets forth conclusory allegations that he was being treated differently than other inmates.  Such conclusory allegations are inadequate to state a claim. Moreover, as discussed *supra*, Plaintiff has already amended the complaint four times. Accordingly, any claim related to Fourteenth Amendment Equal Protection is dismissed with prejudice.

### E.   Fourteenth Amendment Due Process Claims

Finally, this Court considers Plaintiff's claim that he was denied due process pursuant to the Fourteenth Amendment with respect to the handling of the misconduct.  At the outset, this Court points out that "[t]he filing of a false misconduct report does not violate an inmate's due process rights. The general rule, as stated in *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986), provides that a 'prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law.'" *Wicker v. Shannon*, 2010 WL 3812351, at *4 (M.D. Pa. 2010).  Thus, even if the misconduct filed by Milliren was false, as Plaintiff alleges, that in and of itself is not a violation of his due process rights.

Moreover, Plaintiff "presumes he is entitled to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539, 563-67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which held that a prisoner facing the deprivation of a constitutionally cognizable liberty interest following an administrative hearing has a due process right to certain procedural protections, including notice of the charges twenty-four hours prior to the hearing, an opportunity to call witnesses and present documentary evidence, and a statement of the grounds for disciplinary action." *Young v. Beard*, 227 F. App'x 138, 141 (3d Cir. 2007). "However, an inmate's procedural due process rights are

not triggered unless the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir.2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). *Id.*

Here, as Defendants contend, Plaintiff has failed to satisfy this standard. See Defs.' Br. (ECF No. 71) at 7-8. The punishments about which Plaintiff complains include his being "confined to his cell for thirty days," losing his prison job, and losing commissary and phone privileges for sixty days. FAC (ECF No. 67) at ¶ 4(a).  Such punishments fall short of a protected liberty interest in this context. *See Armstrong v. Brooks*, 283 F. App'x 906, 909 (3d Cir. 2008) (holding that "a sanction of thirty days cell restriction does not trigger procedural due process protections").  Based on the foregoing, Plaintiff's Fourteenth Amendment Due Process claims related to this misconduct are dismissed as to all Defendants.

## IV.    CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is granted in part and denied in part.  Defendants' motion to dismiss Defendants Hamilton and Feathers is granted, and those Defendants are dismissed with prejudice.  In addition, Defendants' motion to dismiss all claims related to the Fourth, Eighth, and Fourteenth Amendments are granted, and those claims against all Defendants are dismissed with prejudice.  Furthermore, Defendants' motion to dismiss Plaintiff's First Amendment access-to-courts claims are granted, and those claims are dismissed with prejudice.  Defendants' motion to dismiss Plaintiff's claims related to First Amendment retaliation is granted in part and denied in part.  Plaintiff's First Amendment retaliation claim related to the Misconduct #D320655 may proceed against Defendants Wetzel, Varner, Moslak, Adams, Dady, Yodis, Whitman, and Milliren.   All other First Amendment retaliation claims against all other Defendants are dismissed with prejudice. An appropriate Order follows.

Dated: August 15, 2022                              BY THE COURT:

                                                    s/Cynthia Reed Eddy
                                                    Cynthia Reed Eddy
                                                    Chief United States Magistrate Judge


cc:      ANDY BUXTON
         424 George Street, Apt. 507
         Braddock, PA 15104
         (via U.S. First Class mail)

         Phillip E. Raymond
         PA Office of Attorney General
         (via ECF electronic notification)