IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| ANDY BUXTON, | ) |
|     Plaintiff, | ) |
| vs. | ) 2:20-CV-01647-CRE |
| JOHN E. WETZEL, SECRETARY OF CORRECTIONS; DORINA VARNER, ZACHARY J. MOSLAK, MELINDA L. ADAMS,SUPERINTENDENT/WARDEN/FACILITY MANAGER; SHANE DADY, DSCS/DEPUTY; J. YODIS, HEARING EXAMINER/COORDINATOR; EDWARD WHITMAN, UNIT MANAGER;  SGT. HAMILTON, KAREN FEATHERS, CHCA; AND ADAM MILLIREN, CORRECTIONAL OFFICER; | ) |
|     Defendants, | ) |

## **MEMORANDUM OPINION**[1]

**CYNTHIA REED EDDY, United States Magistrate Judge**

    This is a civil rights action initiated under 42 U.S.C. § 1983 by pro se Plaintiff Andy Buxton ("Plaintiff"), a former SCI-Mercer inmate. Presently before the Court are the following:

    (i) a motion filed by Plaintiff seeking summary judgment on his remaining claim of First Amendment retaliation—related to a misconduct charge ("Misconduct #D320655"), against Defendants Wetzel, Varner, Moslak, Adams, Dady, Yodis, Whitman, and Milliren (collectively "Corrections Defendants" or individually referenced), (ECF No. 119); and

---

[1]     All parties consented to jurisdiction before a United States Magistrate Judge. (ECF Nos. 41, 42). Thus, the Court can decide dispositive motions, and eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

1

(ii) a motion filed by Corrections Defendants seeking summary judgment on Plaintiff's remaining claim of First Amendment retaliation—related to Misconduct #D320655, (ECF No. 123).[2]

The motions are fully briefed, and the record is thoroughly developed. *See* (ECF Nos. 118, 120, 121, 124, 125, 126, 127, 128, 129, 130, 131, 133, 134, 135).

For the reasons that follow, Plaintiff's motion will be denied, and Corrections Defendants' motion will be denied in part and granted in part: denied as to the remaining claim of First Amendment retaliation—related to Misconduct #D320655, against Defendant Milliren; granted as to the remaining claim of First Amendment retaliation—related to Misconduct #D320655, including conspiracy to retaliate, against Corrections Defendants; and granted as to Plaintiff's claim for compensatory damages is precluded by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e).

## I.   Background

Plaintiff was incarcerated at SCI-Mercer where the events giving rise to this lawsuit occurred. Plaintiff's remaining claim against Corrections Defendants alleges First Amendment retaliation related to Misconduct #D320655.

According to Plaintiff, "as a result of the protected conduct (filing grievances), [Defendant] Milliren took adverse action (retribution) against Plaintiff by fabricating [Misconduct #D320655][.]" [sic]. *See* Fourth Am. Compl. ("FAC") (ECF No. 67) at p. 19. Plaintiff claims Defendant Milliren stated to Plaintiff that he was aware of Plaintiff's grievances stemming from 2019 and, as

---

[2]   In Corrections Defendants' motion for summary judgment and brief in support, counsel sometimes includes Defendant Hamilton and Defendant Feathers. (ECF Nos. 123, 124). By Memorandum Opinion and Order filed on August 15, 2022, Defendant Hamilton and Defendant Feathers were dismissed with prejudice. *See* Memo. Op. and Order (ECF Nos. 73, 74).

a result, retaliated against him. *Id*. Plaintiff alleges that Defendant Milliren "knew that a misconduct would jeopardize Plaintiff's liberty interest (granting of parole)." *Id*. Plaintiff further alleges that Corrections Defendants "aided, abetted and encouraged [Defendant] Milliren's retaliatory conduct." [sic]. *Id*. at p. 20.

Plaintiff initiated this action pro se on November 2, 2020, and proceed *in forma pauperis*. The original complaint was filed on January 29, 2021. (ECF No. 16). After several motions for leave to amend, among others, the operative FAC was filed on January 12, 2022. FAC (ECF No. 67). Plaintiff's FAC asserted many causes of action under 42 U.S.C. § 1983 against ten-named defendants, related to incidents while incarcerated at SCI-Mercer. *Id*. Then-defendants moved to dismiss the entire FAC under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (ECF No. 69). By Memorandum Opinion and Order filed on August 15, 2022, the Court granted in part and denied in part the motion to dismiss. *See* Memo. Op. and Order (ECF Nos. 73, 74). As a result, Plaintiff's remaining claim against Corrections Defendants alleges retaliation related to Misconduct #D320655 in violation of his First Amendment rights. *Id*. Plaintiff seeks compensatory and punitive damages each "in the amount of anywhere up to $11 million against each defendant." FAC, Paragraph V – Prayer for Relief (ECF No. 69).

After discovery closed, the parties cross-moved for summary judgment.

## II.     Standard of Review

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'affect[s] the outcome of the suit under the governing law'." *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, the Court's function is not to

weigh the evidence, to determine the truth, or to evaluate credibility. *See Montone v. City of Jersey City*, 709 F.3d 181 (3d Cir. 2013). Rather, "[i]n determining whether a genuine dispute of material fact exists, [the Court] view[s] the underlying facts and draw[s] all reasonable inferences in favor of the party opposing the motion." *Bland*, 900 F.3d at 83 (citing *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014)).

The summary judgment rules do not apply any differently to cross-motions. *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008). " 'Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.' " *Id.* (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). If upon review of cross-motions for summary judgment the court finds no genuine dispute over material facts, then judgment will be entered in favor of the party deserving judgment considering the law and undisputed facts. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

When a party represents himself pro se, his filings are to be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). If the court can reasonably read the plaintiff's pleadings together with his summary judgment submissions to show an entitlement to relief, then the court should do so despite any failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982). Still, at the summary judgment stage of the proceedings, the Court need not credit any "bald assertions" or "legal conclusions" that are unaccompanied by evidentiary support. *Jones v. United*

4

*Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000); *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."). "[A] pro se plaintiff is not relieved of his obligation under [Fed. R. Civ. P.] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted).

**III.    Discussion**

    A.  <u>First Amendment Retaliation Claim</u>

Retaliation for the exercise of a constitutionally protected activity violates rights secured by the Constitution and is actionable under § 1983.[3] *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001). "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Allah v. Seiverling*, 229 F.3d 220, 224-225 (3d Cir. 2000)).

To prevail on a First Amendment retaliation claim, a prisoner-plaintiff must make a three-part prima facia showing. *Rauser*, 241 F.3d 330. First, the prisoner must "prove that the conduct which led to the alleged retaliation was constitutionally protected." *Id.* at 333. (citations omitted). Next, the prisoner "must show that he suffered some 'adverse action' at the hands of the prison officials." *Id.* (citation omitted). The prisoner satisfies the adverse action requirement by "demonstrating that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights'." *Id.* (quoting *Allah*, 229 F.3d at 225). Finally, the prisoner must demonstrate "a causal link between the exercise of his constitutional rights and the adverse

---

[3] "Title 42 U.S.C. § 1983 is not a source of substantive rights but a vehicle for vindicating rights conferred by the U.S. Constitution or by federal statute." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citation omitted).

5

action taken against him." *Rauser*, 241 F.3d at 333. A causal link is established when the "constitutionally protected conduct was a substantial or motivating factor in the decision" to take the alleged adverse action. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Rauser*, 241 F.3d at 333); *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser*, 241 F.3d at 333–334). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant to establish a causal link between the two events, but it is not dispositive. *See Lape v. Pennsylvania*, 157 F. App'x 491, 497-498 (3d Cir. 2005).

After a prisoner states a prima facie case, the burden shifts to the defendant prison officials to show they would have engaged in the same alleged adverse action even without the protected conduct. *Rauser*, 241 F.3d at 334. "[M]ost prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence" because courts afford prison officials "great deference" in the context of prison disciplinary proceedings. *Watson*, 834 F.3d at 425 (citing *Carter*, 292 F.3d at 158). Prison officials are entitled to summary judgment for disciplining a prisoner, even if their actions were motivated by animus, so long as the quantum of evidence shows that the prisoner committed a "clear and overt" violation of prison policy. *Carter*, 292 F.3d at 159. On the other hand, prison officials are not entitled to summary judgment where the prisoner's misconduct was not such a clear and overt violation of prison policy that a reasonable fact finder could conclude that he was punished not in furtherance of a legitimate penological interest but for engaging in the protected conduct. *See Watson*, 834 F.3d at 426.

  i. <u>Defendant Milliren</u>

Plaintiff maintains that Defendant Milliren fabricated Misconduct #D320655 in retaliation for Plaintiff's "grievance." (ECF No. 120) at p. 3. Corrections Defendants maintain there is no

6

causal connection between Plaintiff's filed grievances and Defendant Milliren's issuance of Misconduct #D320655. (ECF No. 124) at p. 5.

### Misconduct #D320655[4]

On February 23, 2020, Defendant Milliren issued Misconduct #D320655 against Plaintiff for obscene language towards an employee; presence in an unauthorized area; and refusal to obey an order. *See* Appendix, Defs. ['] Concise Stmt. of Facts, Exhibit E (ECF No. 126-5) at p. 3. Defendant Milliren's version of the evidence in Misconduct #D320655 provided:

> [Around 10:50 A.M. on 2/23/20] after block out terminated and I secured the doors on the housing unit, I/M ["inmate"] Buxton failed to lock himself into his cell as ordered to do. I opened his door and ordered him to lock into his cell. [Inmate] Buzton said to me "ok Bastard" on three occasions. [Inmate] Buxton then tried to shake out his rugs which were left out on the table. I ordered [inmate] Buxton again to lock into his cell and square his door behind him. [Inmate] Buxton then said that I was "treating him like a slave". After five minutes of him taking about me treating him like a slave, he went into his cell and failed to lock it behind him as he was ordered to do. [Inmate] Buxton has multiple entries on his D.C. 14 for not locking into his cell and loitering in the day room.

*Id.* Plaintiff's version of the evidence in Misconduct #D320655 provided:

> Complied with the order given at said time. In which the video will clearly show this and exonerate me. . . . I do not know [Defendant Milliren's] mother nor father to be calling him a "bastard" that doesn't even make any sense. . . . I am doing everything I need to be doing to secure my release. . . .

*Id.* at p. 6. The Hearing Examiner, Defendant Yodis, found that a preponderance of the evidence existed to support the charges of obscene language towards an employee and refusal to obey an order: Plaintiff was sanctioned with 30 days of cell restriction and loss of job effective February 25, 2020. *Id.* at p. 2. On March 2, 2020, the Program Review Committee upheld that decision

---

[4] The details of Misconduct #D320655 are gathered from the parties' relative exhibits of it; reviewed individually, one exhibit was incomplete, and the other exhibit had portions lacking perceivable visual quality. *See* Appendix, Defs. ['] Concise Stmt. of Facts, Exhibit E (ECF No. 126-5) and Appendix, Pl. ['s] Concise Stmt. of Facts, Exhibit 2 (ECF No. 118-1). The parties' relative exhibits reviewed together, however, are sufficient. *Id.*

"finding no reason to alter the sanction at this time. The punishment [was] within the presumptive guidelines per DC ADM 801 and the Hearing Examiner [Defendant Yodis was] in the best position to objectively rule in this case." Appendix, Pl.['s] Concise Stmt. of Facts, Exhibit 2 (ECF No. 118-1) at p. 17. Plaintiff appealed to the Superintendent, Defendant Adams, and it was initially denied on March 16, 2020, for these reasons:

> In your appeal, you argue the findings of fact. The Hearing Examiner [Defendant Yodis] is in the best position to make that determination. [Program Review Committee] choosing to watch the video and the Hearing Examiner [Defendant Yodis] not, does not change anything. That was each of their decisions. Either way, as stated by the Hearing Examiner [Defendant Yodis], there is no audio. No additional information or evidence was submitted to change the decision. Therefore, I am sustaining the misconduct and impose sanctions. Your appeal is denied.

*Id*. at p. 19. Plaintiff appealed again, and on March 23, 2020, Superintendent Defendant Adams dismissed Misconduct #D320655 and its related charges. *Id*. at p. 21. No specifics were otherwise provided within the notated decision. *Id.*

According to the FAC, Defendant Milliren stated to Plaintiff that he knew about Plaintiff's grievances stemming from 2019 and, as a result, retaliated against him. FAC (EFF No. 67) at p. 20. Corrections Defendants argue the grievances filed by Plaintiff before the issuance of Misconduct #D320655 had no mention of Defendant Milliren. (ECF No. 124) at p. 2.

It is undisputed that from 2019 to February 23, 2020—when Defendant Milliren's issued Misconduct #D320655, Plaintiff filed these grievances: # 787422 on February 20, 2019; # 823683 on September 19, 2020; and # 845115 on January 17, 2020. Appendix, Defs. ['] Concise Stmt. of Facts, Exhibit A (ECF No. 126-1). It is also undisputed that Defendant Milliren was unmentioned in those grievances. (ECF Nos. 125, 130) ¶¶ 3, 5, 7. Indeed no causal connection exists between Misconduct #D320655 and grievances # 787422, # 823683, or # 845115. *Carter*, 292 F.3d at 158. That said, Plaintiff's response argues a causal connection between Misconduct #D320655 and

8

grievances # 852829 and # 859407. (ECF No. 127) ¶ 12. Plaintiff's grievances # 852829 and # 859407 are discussed next.

### Grievance # 852829

On February 23, 2020—the same day Defendant Milliren issued Misconduct #D320655 against Plaintiff—Plaintiff filed grievance # 852829 against Defendant Milliren. Grievance # 852829 (ECF No. 126-6). Receipt of grievance # 852829 was acknowledged by the facility grievance coordinator, but because Plaintiff initially "fail[ed] to comply with the submission provisions of DC-ADM 804" it was ultimately processed on March 2, 2020, after Plaintiff accordingly amended it. (ECF No. 126-6) at pp. 6, 8. Plaintiff's grievance complained of Defendant Milliren's conduct and comments:

> On 2-23-20 Officer Milliren referred to me and other inmates as ["]indentured slaves" . . . [Officer Milliren] found this to be very amusing. In which I replied "ok Master"[.] . . . This ethic intimidation and retaliation behavior is being displayed for letting my voice be heard. . . . This behavior . . . is used to prevent me from making parole. Clearly an act of retaliation for letting my voice be heard[.] . . . Due to the numerous of warnings I brought to the staff and wardens attention[.] [sic]

(ECF No. 126-6) at pp. 6-7. As relief, Plaintiff requested Defendant Milliren's termination. *Id.* The grievance was denied because "on the date in question, [Plaintiff] blatantly disregarded direct orders to lock in. The record indicates that [Defendant] Milliren made a derogatory comment in response to [Plaintiff's] behavior, . . . based upon your claims and [Defendant Milliran's] conversation with this Unit Manager I am denying this grievance due to the adage "two wrongs don't make it right". [Defendant Milliren] will also receive a verbal reprimand regarding this incident." (ECF No. 126-6) at p. 5. Plaintiff appealed to the facility's manager and to final review; both appeals were denied on April 2, 2020, and May 22, 2020, respectively. *Id*. at pp. 1-2.

9

<u>Grievance # 859407</u>

On March 31, 2020, Plaintiff filed grievance #859407 which stated that Unit Manager Defendant Whitman, spoke to Plaintiff about Misconduct #D320655 and grievance # 852829. Grievance #859407 (ECF No. 118-1) at p. 93. Plaintiff's grievance asserted: "the reason everything happening to me is because he is white" and "I was crying and licking the Superintendent's Ass. That's why the charges were dismissed. . . . this is retaliatory. . . .". *Id.* As relief, Plaintiff requested a million dollars. *Id.* The grievance was denied on April 22, 2020, for these reasons:

> Note: You reference Misconduct #D320655 in your grievance, but there is no record of a misconduct with that number in your [Department of Corrections] records.
>
> . . .
>
> Mr. Whitman did admit that he described your discussing this matter with Superintendent [Defendant] Adams as 'crying.' He also stated that he told you that you continue to receive misconducts due to your behavior and actions on the housing unit. Mr. Whitman denied depicting you as a racist, suggesting that you were receiving misconducts because he (Mr. Whitman) was white, or retaliating against you because you voiced your Constitutional Rights.
>
> . . .
>
> Based upon review of the information received and conversations with you and Mr. Whitman, this grievance is denied, and you will not be receiving compensatory and/or punitive damages.

*Id.* at 94. Plaintiff appealed to the facility's manager and to final review; both appeals were denied. *Id*. at pp. 96, 98.

Plaintiff's grievance # 859407 lacks causal connection with Misconduct #D320655. Defendant Milliren issued Misconduct #D320655 on February 23, 2020, and Plaintiff filed grievance # 859407 on March 31, 2020. On the other hand, Plaintiff's filing of grievance # 852829 demonstrates temporal proximity to Misconduct #D32065.

The initial filing of Grievance # 852829 was not time-stamped—it only included the date: February 23, 2020. Grievance # 852829 (ECF No. 126-6) at pp. 9-10. Which leads to conjecture as to whether Defendant Milliren filed Misconduct #D320655 after Plaintiff filed grievance # 852829. As to the February 23, 2020 incident, Plaintiff claims Defendant Milliren stated to Plaintiff that he would "get [him] by writing [him] up, so [he] don't make parole." [sic] (ECF No. 129) ¶ 17. Plaintiff also claims that at one point Defendant Milliren said to Plaintiff "this is the DOC all staff members stick together and are all immune" and "so, it's my word against a slave let's see if [Plaintiff] files anymore grievances." (ECF No. 118-2) ¶ 18. The summary judgment record is unclear if Defendant Milliren knew of Plaintiff's grievance # 852829 and acted on that information to issue Misconduct #D320655.

As to the two remaining prima facia parts of Plaintiff's retaliation claim against Defendant Milliren, the Court finds that Plaintiff participated in a constitutionally protected activity and suffered adverse action. Corrections Defendants argue that the verbal exchange between Plaintiff and Defendant Milliren on February 23, 2020, is not a constitutionally protected activity. (ECF No. 133) at pp. 3-4. But Plaintiff filed grievance # 852829 against Defendant Milliren complaining of their February 23, 2020 verbal exchange. *See Fantone v. Latini*, 780 F.3d 184, 192 n.8 (3d Cir. 2015), *as amended* (Mar. 24, 2015) ("The filing of a prison grievance is an activity protected by the First Amendment."). As a result of Misconduct #D320655, Plaintiff was penalized with cell restriction and loss of job from February 25, 2020, until at least March 23, 2020—when Misconduct #D320655 was dismissed.[5] *Rauser*, 241 F.3d 330.

---

[5]    *Compare Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (holding that, in the absence of a penalty arising from an allegedly false misconduct, no adverse action is suffered) and *Jordan v. Wetzel*, No. CV 16-307, 2019 WL 1382512, at *4 (W.D. Pa. Mar. 27, 2019) (same) *with*, *Williams v. Lee*, No. 1:19-CV-41, 2020 WL 5704272, at *7 (W.D. Pa. Sept. 24, 2020) (holding

11

Moreover, Corrections Defendants have not shown that Defendant Milliren would have filed Misconduct #D320655 even without the protected activity. *Rauser*, 241 F.3d at 334. In fact, after the Superintendent, Defendant Adams, reviewed the appeal of Grievance # 852829—which included Defendant Milliren's admission of calling Plaintiff inappropriate names, Misconduct #D320655 was dismissed, and Plaintiff's charges were exonerated. *See* Pl. [']s] Appendix, Concise Stmt. of Facts, Exhibit 9 (ECF No. 118-1) ¶ 12. The summary judgment record reveals facts in genuine dispute about whether Defendant Milliren would have issued Misconduct #D320655 despite Plaintiff filing grievance # 852829. These credibility determinations are the province of a jury.

As a result, the cross-motions will be denied as to Plaintiff's remaining claim of First Amendment retaliation—related to Misconduct #D320655, against Defendant Milliren.

ii. Corrections Defendants

Next, Plaintiff maintains that Corrections Defendants conspired to retaliate and deny Plaintiff's parole in June 2020.[6] (ECF No. 120) at p. 4. He relatedly maintains that Misconduct #D320655 caused his June 2020 parole to be denied. (ECF No. 129) ¶ 18. Corrections Defendants maintain that Plaintiff failed to adduce evidence of conspiratorial retaliation. (ECF No. 124) at pp. 5-6.

To show a claim of civil conspiracy under § 1983, Plaintiff must allege that (1) two or more persons conspired to deprive him of a constitutional right; (2) that one or more of the conspirators performed an overt act in furtherance of the conspiracy; and (3) the overt act injured Plaintiff by

---

that an inmate serving penalties in response to a misconduct before it is dismissed is sufficient adverse action).

[6]     Plaintiff's exhibits reveal June 12, 2020, as the affiliated parole at issue. *See* Pl. [']s] Appendix, Concise Stmt. of Fact, Exhibit 13 (ECF No. 118-1) at pp. 86-87.

depriving him of his constitutional right; and (4) the conspirators were acting under color of state law. *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (quoting 42 U.S.C. § 1983). A "mere general allegation" or "averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient" to state a claim for civil conspiracy under § 1983. *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984), *aff'd,* 769 F.2d 152 (3d Cir. 1985).

Plaintiff's June 2020 Parole

Plaintiff was considered for parole by the Pennsylvania Parole Board ("Parole Board") in June 2020. *See* Pl. ['s] Appendix, Concise Stmt. of Fact, Exhibit 13 (ECF No. 118-1) at pp. 86-87. On June 12, 2020, the Parole Board denied Plaintiff's parole for various reasons:

> Your institutional behavior, including reported misconducts. Your risk and needs assessment indicating your level of risk to the community. Your failure to demonstrate motivation for success. Other factors deemed pertinent in determining that you should not be paroled: your lack of insight into your criminal thinking and how it affects you [sic] life requires a longer period of incarceration. You are to be reviewed in or after June 2021. At your next interview, the board will review your filed and consider whether you have maintained a favorable recommendation for parole from the department of corrections.

*Id.* (quoted verbatim).[7]

As the basis for conspiracy, Plaintiff recites his interpretation of SCI Mercer's general misconduct review process such that Corrections Defendants had "awareness" and thus purportedly conspired against him. (ECF No. 129) ¶ 44. The summary judgment record otherwise lacks evidentiary support to reveal that Corrections Defendants conspired to retaliate against Plaintiff; in this regard, it merely contains Plaintiff's bald assertions. For example, Plaintiff claims

---

[7] On December 15, 2022, Plaintiff filed a notice of address change which indicated a non-incarcerated address. (ECF No. 86).

Corrections Defendants conspired against Plaintiff to "caus[e] Plaintiff loss of parole," and "worked in unison to have Plaintiff's Parole denied, harass and intimidate Plaintiff." [sic] (ECF No. 120) at p. 4.

Plaintiff next appears to argue that the denial of his June 2020 parole was an "adverse action" caused by Corrections Defendants as retaliation. He generally asserts that Corrections Defendants "could have carefully reviewed [Misconduct #D320655] and dismissed [it] but all did not perform their duty in an unbiased manner thereby failing to perform their duty as required". (ECF No. 120) at p. 4.

Because Plaintiff was denied parole for various reasons that resulted from his own behavior—not Corrections Defendants' conduct, Plaintiff cannot prove retaliation. *See* (ECF No. 118-1) pp. 86-87. For instance, Plaintiff's June 2020 parole was denied because of his level of risk to the community; his failure to demonstrate motivation for success; and his refusal to accept responsibility for offenses committed, among other reasons. *Id.* In addition, from before April 22, 2020, no record of Misconduct #D320655 in Plaintiff's Department of Corrections records existed. *See* Grievance # 859407, Appendix, Pl.['s] Resp., Exhibit 17 (ECF No. 128-16) at p. 4. Misconduct #D320655 was not the cause of Plaintiff's June 2020 parole denial.

Corrections Defendants' motion will be granted as to the remaining claim of First Amendment retaliation—related to Misconduct #D320655, including conspiracy to retaliate, against Corrections Defendants.

iii. Damages

Corrections Defendants argue that if Plaintiff established a constitutional violation, then compensatory damages cannot be recovered because Plaintiff suffered no corollary physical injury to the constitutional violation. (ECF No. 124) at p. 6. Plaintiff responds that because of his "eye

surgery 3-16-20," [sic] (ECF No. 129) at p. 2, physical injuries ensued such that "[he] had difficulties after being on anesthesia and medication hit his eye and head several times while being confined unattended (falling of bed, tripping, forming limp on back of plaintiff hear). Simultaneously dealing with skin rashes, foot pain, cysts, boils, insect bites." [sic] (ECF No. 130) at p. 3. The Court agrees with Corrections Defendants.

Compensatory damages for claims brought under § 1983 "may only be awarded to compensate for actual injury suffered as a result of the violation of a constitutional right." *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986)). The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). That said, §1997e(e) only applies to claims for compensatory damages. *Mitchell*, 318 F.3d at 533. It does not bar claims for nominal damages, punitive damages, or prospective equitable relief, such as injunctive or declaratory relief. *See Mitchell*, 318 F.3d at 533–534; *Doe v. Delie*, 257 F.3d 309, 314 (3d Cir. 2001) n. 3 (3d Cir. 2001) ("Section 1997e(e) does not bar claims seeking nominal damages to vindicate constitutional rights, nor claims seeking punitive damages to deter or punish egregious violations of constitutional rights."); *Allah*, 226 F.3d at 252 (holding that § 1997e(e) does not bar nominal and punitive damages for violating constitutional rights even without physical injury).

Plaintiff's FAC seeks compensatory and punitive damages. FAC, Paragraph V – Prayer for Relief (ECF No. 69). Because Plaintiff fails to establish a physical injury because of the constitutional violation, compensatory damages are precluded. 42 U.S.C. § 1997e(e). Although Plaintiff does not explicitly seek nominal damages, he need not plead it. *See Mitchell*, 318 F.3d at

533. Thus, it is for the jury to determine whether Plaintiff is entitled to nominal and punitive damages.

Corrections Defendants' motion will be granted as to Plaintiff's claim for compensatory damages is precluded by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e).

### IV.     Conclusion

For these reasons, Plaintiff's motion (ECF No. 119) will be denied, and Corrections Defendants' motion (ECF No. 123) will be denied in part and granted in part: denied as to the remaining claim of First Amendment retaliation—related to Misconduct #D320655, against Defendant Milliren; granted as to the remaining claim of First Amendment retaliation—related to Misconduct #D320655, including conspiracy to retaliate, against Corrections Defendants; and granted as to Plaintiff's claim for compensatory damages is precluded by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e).

An appropriate Order follows.

Dated: March 25, 2024

BY THE COURT:

s/Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:     ANDY BUXTON
        (via ECF electronic notification)

        Counsel of Record
        (via ECF electronic notification)